**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**MEDITERRANEA DI NAVIGAZIONE SPA,**

               **Plaintiff,**         **06 Civ. 6700 (JGK)**

      - against -                **OPINION AND ORDER**

**INTERNATIONAL PETROCHEMICAL GROUP**
**S.A.,**

               **Defendant.**
───────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The defendant, International Petrochemical Group S.A. ("IPG"), moves pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims to vacate an order of maritime attachment issued by this Court on September 5, 2006.  On that day, the plaintiff, Mediterranea Navigazione SPA, filed a verified complaint against the defendant, alleging breach of a charter party (V. Compl. ¶¶ 5-8), and seeking an ex parte order of attachment in aid of a London arbitration (id. ¶¶ 9, 12).  The Court reviewed the verified complaint and attorney affidavit and, after determining that the conditions of Supplemental Rule B appeared to exist, entered an order authorizing process of maritime attachment and garnishment.  On about September 25, 2006, the defendant learned that, pursuant to the order of attachment, $473,857.15, the full amount sought by the plaintiff, had been attached.  (See Aff. of Jurg Johner, Jan. 10, 2007, ¶¶ 3-4, Ex. A.)  The funds were attached while in

the hands of an intermediary bank in New York, the Bank of New York, during an electronic funds transfer ("EFT") originating from the defendant's bank in Switzerland and intended for a third party. (Id. ¶ 3.)

The defendant moved to vacate the order of attachment on January 25, 2007. On March 12, 2007, the defendant filed an "amended motion," which the defendant intended to supplement its original motion of January 25. Following several adjournments at the defendant's request, the Court heard argument on the motion on May 3, 2007. For the reasons discussed below, the defendant's motion to vacate the order of attachment is **DENIED**.

                              **I.**

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E, the plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or

maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., No. 05 Civ. 7955 (GEL), 2006 WL 3019558, at *2 (S.D.N.Y. Oct. 23, 2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied. Aqua Stoli, 460 F.3d at 445.

**II.**

The defendant's challenge to the order of attachment, as supplemented by its "amended motion," rests on three grounds. First, the defendant argues that an EFT, while in the hands of an intermediary bank, is not the property of the defendant and thus cannot be attached. Second, the defendant argues that the attachment must be vacated because the plaintiff has failed to demonstrate a need for the attachment as security in aid of London arbitration. Third, the defendant argues that the terms of the charter party preclude the Rule B attachment. These arguments are without merit.

**A.**

The defendant argues that funds in the temporary hands of an intermediary bank pursuant to an EFT are neither the property

of the sender nor the property of the intended beneficiary of the funds.  Therefore, the defendant argues that the attachment should be vacated because the attached EFT funds, although having originated from the defendant's bank, no longer constituted the "property" of the defendant when the funds were attached at the intermediary bank in New York.

The defendant's argument is foreclosed by the law of this Circuit.  In Winter Storm Shipping, Ltd. v. TPI, the Court of Appeals for the Second Circuit declared that "EFT funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)."  310 F.3d 263, 278 (2d Cir. 2002).  Like this case, Winter Storm involved the attachment of EFT funds that originated from the defendant at its bank.  Id. at 266-67.  The court recognized that EFT funds that are temporarily in the hands of an intermediary bank are attachable as the property of a defendant for the purposes of Rule B.  See HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V., No. 04 Civ. 6884 (NRB), 2005 WL 1036127, at *4 (S.D.N.Y. May 4, 2005).  The Court of Appeals reaffirmed this rule in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., explaining that "[u]nder the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction."  460 F.3d at 436 (citing Winter Storm, 310 F.3d at 263).

Although the Court of Appeals in Aqua Stoli mused in a footnote that "[t]he correctness of our decision in Winter Storm seems open to question," 460 F.3d at 445 n.6, the court did not--and indeed could not then--overrule its decision in Winter Storm.  See United States v. Ianniello, 808 F.2d 184, 190 (2d Cir. 1986) ("The court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court en banc."), overruled on other grounds by United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir. 1989) (en banc); Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222, 224 n.2 (S.D.N.Y. 2006).  As Judge Casey explained:  "That the court of appeals made mention, in a footnote, of a reason why Winter Storm might have been incorrectly decided is of no moment.  Indeed, Aqua Stoli can only be read to reaffirm Winter Storm as the law of this circuit."  Maersk, Inc. v. Neewra, Inc., No. 05 Civ. 4356 (RCC), 2006 WL 2854298, at *2 (S.D.N.Y. Oct. 6, 2006); see also Consub Delaware LLC v. Schahin Engenharia Limitada, No. 06 Civ. 13153 (SAS), 2007 WL 473728, at *4 (S.D.N.Y. Feb. 13, 2007) ("Despite the fact that the Second Circuit--in dicta-- questioned the correctness of Winter Storm, it did not overrule Winter Storm.").

Nonetheless, the defendant claims that Winter Storm no longer reflects the law of this Circuit after Aqua Stoli.  In

support of its position, the defendant mistakenly relies on the district court decision in Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.  In that case, the district court narrowly construed the holding in Winter Storm, stating that "[g]iven that Aqua Stoli called Winter Storm into serious doubt... it would be illogical to construe other statements in Aqua Stoli to broaden Winter Storm."  Seamar Shipping, 461 F. Supp. 2d at 225 (internal citation omitted).  Applying that narrow construction, the court explained that "Winter Storm's holding that an EFT is the property of an originator while in transit does not imply a corollary rule that the EFT is also the property of a beneficiary while in transit."  Id.  Ultimately, the court looked to New York law for guidance and concluded that the beneficiary of an EFT has no property interest in the funds transfer until the transfer is complete.  Id. at 226.

Unlike Seamar Shipping, the defendant in this case is the originator of the EFT, not the beneficiary.  Thus, on these facts, the Court need not resolve whether Seamar Shipping's narrow construction of Winter Storm is correct.[1]  Even the district court in Seamar Shipping recognized that, at the very

---

[1] The Court notes, however, that several district courts have disagreed with the decision in Seamar Shipping.  See Compania Sudamericana de Vapores v. Sinochem Tianjin Co., No. 06 Civ. 13765 (WHP), 2007 WL 1002265, at *4 (S.D.N.Y. Apr. 4, 2007) (collecting cases); see also Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., No. 07 Civ. 372 (AKH), 2007 WL 120067, at *9 (S.D.N.Y. Apr. 24, 2007).

least, Winter Storm held that an EFT is the property of an originator while in transit.  The funds at issue here were attached while in the hands of an intermediary bank during an EFT that the defendant originated.  Therefore, applying Winter Storm, the EFT funds were the defendant's property when attached; the defendant's contrary argument fails and supplies no basis for vacating the attachment.

**B.**

The defendant next argues that the plaintiff has failed to demonstrate a sufficient need for security in aid of arbitration because the defendant has substantial assets to satisfy any potential judgment in the arbitration and, in addition, has already appeared in and is actively defending the London arbitration.

In support of its argument, the defendant relies exclusively on cases that were decided before the decision of the Second Circuit Court of Appeals in Aqua Stoli.  However, in Aqua Stoli the Court of Appeals rejected this precise argument, explaining:

> If [the defendant's] assets are presently located in the Southern District and [the defendant] cannot be "found" within the district, [the plaintiff] is entitled under Rule B to attach those assets in aid of jurisdiction and to serve as security.  The fact that [the defendant] has substantial assets in another country is of no moment.  Federal admiralty law allows

-7-

> a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down.  Should it wish, [the defendant] has the option of relieving itself of this particular attachment by posting other security.  Rule E does not require [the plaintiff] to go to Australia or any other country to sue [the defendant] or to obtain security as long as [the defendant's] assets are available to [the plaintiff] here.

Aqua Stoli, 460 F.3d at 444.  Therefore, the defendant's allegation that it has substantial assets located outside this District, which will provide sufficient security for any potential judgment, also provides no basis for vacating the attachment.

c.

Finally, the defendant argues that the charter party, specifically its forum selection clause and choice of law provision, precludes a Rule B attachment and requires that the attachment be vacated.  The terms of the charter party, reflected in the fixture note, provide for "ARBITRATION LONDON ENGLISH LAW."  (See Ex. A to Wilson Aff.)  More specifically, the fixture note incorporates terms from the standard ASBATANKVOY form, which the parties agree provides in clause 24:

> Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the... City of London... pursuant to the laws relating to arbitration there in force....

-8-

(See Letter from Francis H. McNamara, May 3, 2007.)  The parties disagree, however, about whether the application of English law, together with this forum selection clause, precludes the Rule B attachment in this case.

**1.**

The first question is whether the forum selection clause in the charter party precludes the plaintiff from seeking and obtaining a pre-award attachment as part of a proceeding ancillary to the London arbitration.  Initially, the Court must determine what law to apply to this question.  "Federal maritime law, including federal maritime choice-of-law rules, applies to maritime contracts."  See Sundance Cruises Corp., SCI v. Am. Bureau of Shipping, 7 F.3d 1077, 1081 (2d Cir. 1993).  In this case, the charter party contains an English choice of law provision.  The parties appear to agree that English substantive law applies to the interpretation of the charter party, such as the scope of the forum selection clause.  However, the plaintiff relies in the alternative on United States law, citing federal maritime decisions.

The parties have not expressly raised the choice-of-law issue, nor have the parties suggested that the decisional law of any other jurisdiction applies.  The Court need not resolve which of federal maritime law or English law governs the

-9-

interpretation of the forum selection clause, because the result is the same no matter which decisional law applies. See, e.g., CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 382 n.8 (2d Cir. 1982); McNamara v. Tug "Diana L. Moran", No. 87 Civ. 3096 (MBM), 1989 WL 106522, at *2 (S.D.N.Y. 1989). The forum selection clause in the charter party does not preclude the plaintiff from obtaining a Rule B attachment under either English or federal maritime law.[2]

Under English law, on which the parties have submitted relevant materials, see Fed. R. Civ. P. 44.1, the general rule is that exclusive jurisdiction clauses will not preclude ancillary relief in other jurisdictions, such as the Rule B attachment here, unless there is an express contractual provision to that effect. See Bankgesellschaft Berlin AG v. First Int'l Shipping Corp. Ltd., (2000) [2001] C.P. Rep. 62 (Q.B.D. (Adm. Ct.)) (Ex. 1 to Decl. of William Chetwood, Mar. 22, 2007 ("Chetwood Decl.")); In re Q's Estate, (1999) 1 Lloyd's Rep. 931 (Q.B.D. (Com. Ct.)) (Ex. 3 to Chetwood Decl.); see also

---

[2] In M/S Bremen v. Zapata Off-Shore Co., the Supreme Court held that a forum selection clause in a maritime contract should be enforced "absent a strong showing that it should be set aside." 407 U.S. 1, 15 (1972). In this case, the parties do not dispute the enforceability of the forum selection clause. The question here is not whether the forum selection clause is enforceable, but whether it applies to the ancillary proceeding at issue in this case, the Rule B attachment in aid of arbitration. The Supreme Court's decision in The Bremen did not address, nor did it resolve, this issue. See Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 631 (9th Cir. 1982) (noting that the Supreme Court's decision in The Bremen did not resolve this question).

Mantovani v Carapelli SpA, (1979) [1980] 1 Lloyd's Rep. 375 (C.A. (Civ. Div.)) (Ex. 2 to Chetwood Decl.); cf. Polar Shipping, 680 F.2d at 632-33 (stating that, under English law, a clause providing that "any dispute arising under the charter shall be decided by the English Courts" did not preclude the plaintiff from obtaining prejudgment security by maritime attachment in the district court).

Essentially the same rule has developed under the federal maritime law of the United States. In Polar Shipping Ltd. v. Oriental Shipping Corp., a decision of the Ninth Circuit Court of Appeals that has been adopted by courts in this District, the court held that

> in an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment in the selected forum.

680 F.2d at 633; see also Consub Delaware, 2007 WL 473728, at *4-*5; Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F. Supp. 2d 386, 395-96 (S.D.N.Y. 2006); Staronset Shipping Ltd. v. N. Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987).

The forum selection clause in this case deals only with the reference of disputes to arbitration in London and fails to

evidence any express intention on behalf of the parties to bar ancillary proceedings in other jurisdictions to obtain security for an arbitration award.  The charter party does not contain any other contractual provision that expressly precludes the plaintiff from seeking pre-award security in an ancillary proceeding.  Therefore, applying either English law or federal maritime law, the charter party does not preclude the plaintiff from obtaining pre-award security in aid of arbitration in an attachment proceeding before this Court.

**2.**

The second question is whether this Court is required to apply English law in deciding whether the Rule B attachment was proper in this case.  Initially, the Court notes that the charter party is silent on the issue of ancillary proceedings and the law to be applied to them, and thus does not address what law should apply to ancillary proceedings.  The choice of law provision is limited to the law to be applied in the arbitration proceeding itself.  In any event, it is clear that federal procedural law applies to the requirements of an attachment.  "The attachment of funds is considered a procedural remedy, and federal law applies to procedural issues in admiralty cases."  Dominion Bulk Int'l, S.A., 2006 WL 3408799, at *1 (collecting cases); see also Winter Storm, 310 F.3d at

-12-

275; Filia Compania Naviera, S.A. v. Petroship, S.A., No. 81 Civ. 7515 (RWS), 1982 U.S. Dist. LEXIS 9401, at *8 (S.D.N.Y. Mar. 18, 1982) ("A general principle of conflict of laws provides that on procedural matters, as opposed to substantive rights of the parties, the law of the forum applies due to the interest of the forum in the manner of judicial administration."). Therefore, the Court declines the defendant's invitation to apply English procedural law to determine whether the Rule B attachment in this case should be vacated. Applying federal procedural law, the plaintiff has established its burden of demonstrating that the requirements of Rules B and E are satisfied.

## CONCLUSION

For all of the reasons discussed above, the defendant's motion to vacate the order of attachment (Doc. # 5 and 14) is **DENIED**.

SO ORDERED.

Dated: New York, New York
May 4, 2007

John G. Koeltl
United States District Judge